UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:15-CV-00108-LLK

**WILLIAM COOMER**                                                                                          **PLAINTIFF**

v.

**CAROLYN COLVIN, Acting Commissioner of Social Security**                      **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the Plaintiff's complaint seeking judicial review of the final decision of the Social Security Administration denying his claim for disability benefits. The fact and law summaries of the parties are at Docket Numbers 14 and 19. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. This matter is ripe for determination.

Because the Administrative Law Judge's (ALJ's) decision was supported by substantial evidence and was in accord with applicable legal standards, the final decision of the Commissioner is AFFIRMED, and Plaintiff's complaint is DISMISSED.

### Background facts and procedural history

Plaintiff alleges disability due to the residual effects of two work-related accidents. In 1997, he ruptured his L5 and S1 discs and fractured his T12 vertebra; and, in 1999, a heavy object hit him in the head fracturing his C1 and C2 vertebrae. Administrative Record (AR), p. 734. After both accidents, he returned to work but alleges that his neck and low back pain gradually worsened to the point of being unable to work. AR, pp. 87 and 734.

Diagnostic images after these injuries revealed mild to moderate abnormalities, and Plaintiff has had no spine surgery. AR, p. 21. No treating source has opined disabling limitations. In October, 2011,

1

Allen Tinsley M.D., observed that Plaintiff's "back pathology is really not that bad and yet he is on a great deal of medications and has no insight." AR, p. 713.

In November, 2011, Plaintiff was examined at the request of the Commissioner by Nicole Kershner, M.D. In her narrative report, Dr. Kershner recounted that Plaintiff told her that he can sit for only 30 minutes, stand for 4-5 minutes, and walk 1-2 blocks before developing neck and back pain requiring him to rest. These findings are incompatible with performance of any type of full-time, 8-hour-a-day work. Dr. Kershner stated that "I feel that [Plaintiff's assertions are] accurate." AR, p. 736.

In January, 2012, based on Dr. Kershner's findings and Plaintiff's treatment record, the state agency found among other things, that, with normal beaks, Plaintiff can stand/walk for a total of 2 hours and sit for a total of 6 hours in an 8-hour workday. AR, p. 79.

In April, 2012, non-examining state agency program physician, Timothy Gregg, M.D., concurred with the foregoing findings. AR, pp. 128-130.

Plaintiff also alleges mental impairment. In November, 2011, psychologist Jeanne M. Bennett, Psy.D., examined him. She identified his chief complaint as physical in nature: "Injuries to my head, neck, and back." AR, p. 725. He denied any in-patient mental health treatment or recent out-patient treatment. AR, p. 727. He reported that, several days earlier, due to years of taking prescription Ultram (i.e., tramadol), "something bad happen[ed] to me neurologically" that has resulted in "tripping" like he has heard others experience with LSD. AR, p. 727. Dr. Bennett observed that Plaintiff appeared to be under the influence of medication. AR, p. 729.

Dr. Bennett diagnosed provisional delusional disorder, NOS (not otherwise specified); depressive disorder, NOS; and pain disorder with psychological features secondary to neck and back injuries. AR, p. 731. She opined that Plaintiff has a "marked" inability to tolerate stress and pressure of day-to-day employment and that he "displayed poor judgment and his capacity for insight appears limited." AR, pp. 730-731.

In January, 2012, based on Dr. Bennett's findings, non-examining state agency program psychologist Christi Bruening, Ph.D., found that the "marked" stress-tolerance limitation identified by Dr. Bennett is not "supported by the evidence" (AR, p. 83) and completed the psychiatric review technique and mental RFC assessment form.  According to Dr. Bruening, Plaintiff is "mentally able to adapt to the changes and pressures of a routine work setting with reasonable support and structure."  AR, p. 83.

In April, 2012, program psychologist Edward Stodola, Ph.D., reaffirmed Dr. Bruening's findings.  AR, pp. 110-111 and 114-116.

In April, 2013, the ALJ conducted an administrative hearing at which Lowell Latto, Ph.D., testified as a vocational expert.  AR, pp. 41-69.

In June, 2013, at the ALJ's request and in light of the hearing transcript, psychologist Elizabeth Kalb, Ph.D., completed a post-hearing medical interrogatory and medical source statement of ability to do work-related activities (mental) form.   Dr. Kalb found no basis in the record for Dr. Bennett's opinion that Plaintiff is markedly unable to tolerate stress and displays poor judgment.  AR, p. 809.  She found that "the record as a whole, suggests he should be able to ... handle the stress and demands of a job" and that he "presented as open and honest and showing adequate self-awareness of himself and his difficulties."  AR, p. 809.

In September, 2013, the ALJ conducted a supplemental administrative hearing, with Dr. Latto again testifying.  AR, pp. 31-40.

In January, 2014, the ALJ issued a decision finding that Plaintiff is not disabled because he retains the ability to perform a significant number of light jobs in the national economy.  AR, pp. 9-25.  In so finding, the ALJ gave "little weight" to Dr. Kershner's disabling findings with respect to Plaintiff's ability to sit, stand, and walk and "great weight" to those of Dr. Gregg.  AR, pp. 22-23.  The ALJ gave "little weight" to Dr. Bennett's finding of marked inability to tolerate stress and "great weight" to the

3

findings of Drs. Stodola and Kalb.  Id.  The ALJ discounted Dr. Bennett's provisional diagnosis of delusional disorder because it was a "self-report of a single incident, which the claimant has since himself opined may have been a stroke" as opposed to a genuinely mental impairment.  AR, p. 22.

The ALJ's decision became the Commissioner's final decision, before this Court upon judicial review, when the Appeals Council declined to disturb it.  AR, pp. 1-3.

## Discussion

Plaintiff presents three contentions.  First, he argues that the ALJ erred in giving greater weight to the non-examining medical source opinions of Drs. Gregg and Kalb than to the one-time examining source opinions of Drs. Kershner and Bennett.

As this Court recently observed, "[d]iffering opinions from doctors regarding social security claimants [] receive differing weights."  *Sprowles v. Commissioner*, No. 1:14-CV-129-GNS-LLK, 2015 WL 5311091 (W.D.Ky.).  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker" – the tie between treating physician and patient being strongest.  Id. citing Soc. Sec. Rul. No. 96-6p, 1996 WL 374180.

"Generally, we give more weight to the opinion of a source who has examined you [e.g., Drs. Kershner and Bennett] than to the opinion of a source who has not examined you [e.g., Drs. Gregg and Kalb]." 20 C.F.R. §§ 404.1527(c)(1) and 416.927(c)(1).

However, this is only a general rule and not a particularly difficult one to overcome.  In contrast to a treating source medical opinion, which may be entitled to controlling weight if well-supported by objective medical evidence, a one-time examining source opinion is entitled to "no special degree of deference." *Barker v. Commissioner*, 40 F.3d 789, 794 (6th Cir.1994).

Except when a treating source medical opinion is given controlling weight, the weight given to any medical opinion is based upon a weighing of multiple factors including:  examining relationship; the treatment relationship, which includes the length of that relationship and the nature and extent of that

4

relationship; supportability of an opinion; consistency of the opinion with the record as a whole; the specialty of the medical source; and other factors, including the amount of understanding of the Social Security Administration disability program and the extent that a medical source has with a claimant's entire case record. 20 C.F.R. §§ 404.1527(c) and 416.927(c).

In *Barker*, supra, the Sixth Circuit upheld the ALJ's preference of a non-examining source opinion where that source "had access to the entire medical record in the case, whereas it appears that [the examining source] worked only from her personal examination of Mr. Barker."

Dr. Kershner's narrative report does not indicate that she was privy to any of Plaintiff's treatment records. AR, pp. 734-739. Her impressions were based on raw observation and a "feeling" that Plaintiff's self-reported limitations due to pain were "accurate." AR, p. 736. It is the ALJ's responsibility to evaluate the credibility of Plaintiff's pain complaints. See 20 C.F.R. §§ 404.1529 and 416.929 ("How we evaluate symptoms, including pain") and Soc. Sec. Rul. No. 96-7p, 1996 WL 374186 ("Assessing the credibility of an individual's statements"). In contrast, Dr. Gregg took into account Plaintiff's treatment record. AR, pp. 129-130.

The ALJ's preference of the non-examining source opinion of Dr. Gregg in this case comported with case-law standards, and Plaintiff has not shown that a proper balancing of the regulatory factors necessitated a different result.

Similarly, Dr. Kalb's opinion took into account the evidence as a whole, including the transcript of Plaintiff's testimony at the administrative hearing. According to *Barker*, supra, access to a claimant's testimony provides additional support in favor of overturning the general preference for an examining source opinion. The fact that three sources other than Dr. Bennett (Drs. Bruening, Stodola, and Kalb) found only moderate inability to tolerate stress detracts from her finding of a marked limitation.

The ALJ had a substantial basis for giving greater weight to the non-examining source opinions.

Secondly, Plaintiff contends that, even if the ALJ properly credited Dr. Gregg's opinion, a finding of disability is required in light of Dr. Gregg's findings regarding his "need to periodically alternate sitting and standing to relieve pain and discomfort" (AR, p. 128) in light of Dr. Latto's testimony that "no full-time jobs would exist if the person had to stop work procedures to rest after 30 minutes of sitting and five minutes of standing" (AR, p. 36).

The argument is unpersuasive for two independent reasons.  First, Dr. Gregg did not find that Plaintiff needs to periodically alternate sitting and standing to relieve pain and discomfort.  This was merely one of several category descriptions on the pre-prepared form that Dr. Gregg was asked to complete.  Dr. Gregg left that category blank.  Where Dr. Gregg found a limitation within a category, he described that limitation with specificity.  See AR, pp. 128-129.  In this case, Dr. Gregg would have described the frequency of need to alternate sitting/standing if he had found such need to be present. Secondly, even if Dr. Gregg did, in fact, find a non-specific need for alternate sitting and standing, he did not identify the disabling frequency contemplated by Dr. Latto's testimony.

Plaintiff's third and final contention is that the ALJ erred in relying on the "incomplete, inaccurate" assessments from Drs. Kalb and Stodola.  DN 14, p. 10.

Dr. Kalb's assessment was allegedly inaccurate because it "misquoted" Dr. Bennett's narrative report. Id.  Dr. Kalb did not misquote Dr. Bennett.  She merely quoted certain portions of the report and omitted others.  In light of Dr. Bennett's report as a whole, Plaintiff has failed to show how Dr. Kalb erred in finding that Dr. Bennett lacked an adequate clinical basis for finding a marked inability to tolerate stress.

Dr. Stodola's opinion was allegedly incomplete because he was privy to "neither the Plaintiff's testimony at the hearing nor the results of Dr. Bennett's consultative examination." DN 14, p. 10.  Dr. Stodola could not have been privy to the hearing testimony that had not yet occurred.   His giving little

weight to the severity of impairment assigned by "CE vendor" (i.e., consultative examination vendor) (AR, p. 116) suggests that he was, in fact, aware of Dr. Bennett's CE.

In any event, there is "no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Commissioner*, 405 F. App'x 997, 1002 (6th Cir. 2011).

The ALJ did not err in relying on the opinions of Drs. Kalb and Stodola.

## Order

For the foregoing reasons, the final decision of the Commissioner is AFFIRMED, and Plaintiff's complaint is DISMISSED.